IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DDR WEINERT, LTD, DDR WILLIAMS, LTD, | § § § | |
| *Plaintiffs* | § § | SA-22-CV-00558-XR |
| -vs- | § § | |
| | § | |
| OVINTIV USA, INC., ENCANA OIL & GAS (USA) INC., | § § § | |
| *Defendants* | § | |

**ORDER**

On this day, the Court considered the status of the above-captioned case. Before the Court

is Defendant Ovintiv USA, Inc.'s ("Ovintiv") motion for summary judgment (ECF No. 36),

Plaintiffs DDR Weinert, LTD ("DDR Weinert") and DDR Williams, LTD's ("DDR Williams")

response (ECF No. 38), and Ovintiv's Reply (ECF No. 40).[1] Also before this Court is Plaintiffs'

cross-motion for summary judgment (ECF No. 37), and Defendant's response (ECF No. 39).

**I.      Background**

This case concerns five tracts of land in Karnes County, Texas, consisting of a 291-acre,

290.63-acre, 11.67-acre, 113.75-acre, and 506.93-acre lot (together, the "Subject Property"). ECF

No. 1-3 at 4. These plots were originally owned by Duane D. Richter and Colleen V. Richter (the

"Richters"). *See generally* ECF No. 36-9, 36-10. The Richters leased the land to Defendant in

exchange for a portion of proceeds from the sale of oil, gas, or minerals produced from the Subject

Property.

In December 2017, the Richters transferred their ownership interests in the Subject

Property to Plaintiffs. The transfer occurred in two waves. First, the Richters transferred 1% of

---

[1] Although Plaintiffs named both Ovintiv USA, Inc. and Encana Oil & Gas (USA) Inc. as defendants, Ovintiv and Encana are the same entity. ECF No. 1-1. This Court will refer to Defendant by its current name, Ovintiv. *Id*.

their interest to DDRD Management, LLC ("DDRD Management") and 99% of their interest to

Plaintiffs.[2] The 291-acre, 290.63-acre, 11.67-acre, and 113.75-acre lots were transferred:

> **SUBJECT TO** (a) all interests in minerals or royalties previously severed or vested in third parties and not currently owned by Grantor, (b) all valid leases for oil and gas or oil, gas and other minerals, (c) all valid royalty agreements, pooling agreements and designations of pooled units, (d) all valid encumbrances of every kind and character, and (e) all easements, restrictions, covenants, conditions and other instruments of record in the Real Property Records of Kames County, Texas which affect the Minerals."

ECF No. 37-3 at 17–20 (together, the "SUBJECT TO" provisions). The 509.93-acre lot was

conveyed:

> . . . **AS IS, WITH ALL FAULTS** and without warranty, except the limited warranty of title contained herein. This conveyance is made and accepted **SUBJECT TO** any existing indebtedness, all easements, restrictions, covenants, conditions and other instruments of record in the Real Property Records of Kames County, Texas which affect the Property.

ECF No. 36-8 at 2 (the "AS IS provision").

The second wave of transfers ocurred on the same day when DDRD Management

transferred its 1% ownership interest to Plaintiffs.[3] *See generally* ECF No. 37-3. The transfers for

all lots except the 113.75-acre parcel included the "AS IS provision." *Id*. at 6–8. The 113.75-acre

parcel was conveyed using the "SUBJECT TO provision." *Id*. at 2.

As a result of these transfers, Plaintiffs assumed the entirety of the Richters' prior interests.[4]

*See generally id*.; *see also* ECF No. 36-8. In doing so, Plaintiffs became the successor Lessors of

the Subject Property and were entitled to the Richters' royalty payments. *Id*. Defendant prepared

---

[2] ECF Nos. 37-3 (conveying 291-acre, 290.63-acre, and 11.67-acre lots), 36-7 (conveying 113.75-acre lot), 36-8 (conveying 506.93-acre lot).

[3] ECF No. 36-6 (conveying 1% interest in 291-acre, 290.63-acre, and 11.67-acre lots), 36-7 (conveying 1% interest in the 113.75-acre lot), 36-8 (conveying 1% interest in 506.93-acre lot).

[4] This Court notes that, notwithstanding the transfers, the Richters have maintained control over the tracts. This is because Duane Richter is the managing member or general partner for all three entities—DDRD Management, DDR Weinert, and DDR Williams. DDRD Management, LLC is managed by Duane D. Richter. ECF No. 36-13. DDRD Management is Plaintiff DDR Weinert's general partner as well as Plaintiff DDR Williams's only "officer, director, member, general partner or manager. ECF Nos. 36-14; 36-15.

new division orders which were executed in April and May 2018 and signed by both Duane D. Richter and Colleen V. Richter.[5] ECF Nos. 36-9; 36-10. The division orders state that "the undersigned agrees to indemnify and reimburse Encana any amount attributable to an interest to which the undersigned is not entitled." *Id*.

On June 26, 2018, Matt Finley, a Division Order Analyst for Defendant, contacted Plaintiffs. Finley explained that in September 2016, Defendant mistakenly adjusted the gas flow on several properties and that the error was not caught until January 2018. ECF Nos. 37-7; 36-1. As a result, some royalty owners were underpaid from September 2016 to January 2018 while others, including the Richters, were overpaid. ECF No. 36-1. Finley informed Plaintiff that Defendant planned to conduct a "prior period adjustment" that year and would deduct any overpayments from future royalty payments "until the Overpayments [sic] were fully recouped." ECF No. 37-7 at 6.[6]

Plaintiffs brought suit on April 27, 2022 in the 81st Judicial District Court of Karnes County, Texas, alleging (1) breach of contract; (2) violations of the Texas Natural Resource Code, TEX. NAT. RES. CODE § 91.401 *et. seq*.; and (3) conversion. ECF No. 1-3 at 6–8. The lawsuit was subsequently removed to this Court on the basis of diversity jurisdiction.

Plaintiffs maintain that Defendant wrongfully withheld approximately $608,815.05 in royalties. ECF No. 1-3. at 5.[7] Defendant admits that it withheld funds but maintains that its conduct was justified by its previous overpayments to the Richters. *See generally* ECF Nos. 16, 36, 39.

---

[5] "Division orders provide a procedure for distributing the proceeds from the sale of oil and gas. They authorize and direct to whom and in what proportion to distribute funds from the sale of oil and gas." *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 691 (Tex. 1986).

[6] Defendant provided the affidavit of Tarek Alshamali, Ovintiv's Revenue Manager and a Certified Public Accountant. ECF No. 36-1. Alshamali detailed the overpayments made to the Richters from September 2016 through January 2018. From September 2016 to December 2017, the Richters were overpaid $575,281.49; in January 2018, Plaintiffs were overpaid $33,536.56. *Id*. at 2–3.

[7] ECF No. 37 at 8 ("Specifically, DDR Weinert received only $59,218.04 when it would have received $585,263.85 if Defendant had not deducted the alleged overpayments to the Richters from DDR Weinert's royalties."). The amount

## II.      Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. PROC. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Nor will a "scintilla of evidence" meet the nonmovant's burden. *Little*, 37 F.3d at 1075. Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

---

of withheld royalties is calculated by subtracting $59,218.04 from $585,263.85 which equals $526,045.23. *See also id.* ("DDR Williams received only $27,764.68 when it would have received $110,534.50."). The amount of withheld royalties is calculated by subtracting $27,764.68 from $110,534.50 which equals $82,769.82.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Products., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

"On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co*., 611 F.3d 299, 304 (5th Cir. 2010).

## III.    Discussion

Plaintiffs' core argument is that "Defendant cannot use alleged overpayments to the Richters in the past as a basis for withholding royalties from non-parties to the original transaction—[Plaintiffs]—who did not receive [that] overpayment." ECF No. 37 at 11.[8] Defendant

---

[8] At times, Plaintiffs frame this argument as one of notice. Specifically, Plaintiffs complain that Defendant did not file a *lis pendens* in the Karnes County public records against the Richters and that Plaintiffs were not told about the overpayments until after the properties were conveyed. ECF No. 38 at 10 ("Ovintiv did not inform the DDR Entities of any alleged overpayment to their predecessor in interest [when the new division orders were drafted], and the DDR Entities were unaware of any such overpayment."); *id.* ("Ovintiv never filed anything documenting its claim for overpayment in the real property records."); ECF No. 37 at 6 ("Nothing existed in the Karnes County, Texas real property records to alert the DDR Entities to Defendant's overpayment claim against the Richters. Ovintiv did not file a *lis pendens* or the lawsuit necessary to support a *lis pendens* at any time before the DDR Entities acquired their royalty interests in December 2017."). However, Plaintiffs have provided no case law indicating that defendants must provide legal notice before exercising their self-help mechanisms. In fact, at least one case indicates the opposite. *See SDF, L.L.C. v. ConocoPhillips Co.*, No. CV 17-00720 RB-KBM, 2018 WL 1183360 (D.N.M. Mar. 6, 2018) (citing

disagrees, maintaining that it had the right to recoup overpaid funds and that this right attached to Plaintiffs' ownership interest.

## A. Recoupment

"Recoupment" is a term used in the oil, gas, and mineral industries used to describe various non-judicial mechanisms by which oil operators (also referred to as "payors") recover overpaid monies. *See generally* Douglas R. Hafer & Daniel B. Mathis, *Mineral Royalty Mispayments: The Payor's Rights, Obligations, and Risks in Royalty Mispayment Scenarios, Including the Pitfalls and Prerogative of Self-Help Recoupment*, 18 TEX. WESLEYAN L. REV. 85 (2011) (hereinafter "*Mineral Mispayments*"); 3 Kuntz, *Law of Oil and Gas* § 42.8 (2023) ("A lessee may recover from the lessor any overpayment of royalty that was made because of mistake of law or fact. The lessee may also recoup from current royalties any overpayments made by mistake.") (internal citations omitted); *see also Waechter v. Amoco Prod. Co.*, 537 P.2d 228 (Kan. 1975) (explaining the equitable justification for recoupment); *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690 (Tex. 1986).

When operators overpay on their wells, "payors routinely recoup royalty overpayments through unilateral 'adjustments,' 'off-sets,' 'revenue rebooking,' or otherwise withhold[]or debit[] a payee's future royalties until the overpaid amounts are collected." *Mineral Mispayments* at 98. Importantly, the parties agree that recoupment is a common and established practice in these industries. *See* ECF Nos. 37-13 (Plaintiffs' expert stating "in my experience in the oil and gas industry, there are two methods to recover overpayment of royalties without a judgment or other judicial mechanism . . . recoupment and setoff."); 39-1 (Defendant stating "prior period

---

*City of Carlsbad v. Grace*, 966 P.2d 1178, 1183 (N.M. Ct. App. 1998) for the proposition that royalty payors can initiate self-help forms of recoupment without obtaining judicial approval). Moreover, the Court agrees that Defendant was not required to file a *lis pendens* because Defendant does not contest Plaintiffs' ownership interests. *See* ECF No. 36 at 16.

adjustments . . . occur frequently in the oil and gas industry and allow operators to pay out royalties in a timely manner with the flexibility to adjust for revised or updated information received at a later date").

After reviewing the parties' briefing and the literature regarding the meaning of "recoupment" and "setoffs" in the oil, gas, and mineral industries, the Court concludes that "recoupment" has two distinct, but related, meanings. Recoupment is first used to describe the methods of self-help available to payors who have overpaid royalty owners. *See Mineral Mispayments* at 98. Typically, payors will notify royalty owners of the overpayment and communicate their intent to correct the mistake through future adjustments. This process is conducted without judicial intervention.

Although there is what one author called a "dearth of Texas case law addressing a payor's remedies against an overpaid party," *see* Katy Wehmeyer & Jordan Stevens, *Withholding Royalty Payments After Conocophillips Co. v. Koopmann*, 52 TEX. TECH L. REV. 439, 484 (2020), prominent treatises recognize that payors can forego self-help recoupment and sue payees for reimbursement. 3 Williams & Meyers, *Oil and Gas Law* § 657 (2022) ("Where as a result of good-faith mistake royalty has been paid to a person not entitled to receive same or where excessive payments have been made in good faith, it is generally held that the lessee (or purchaser) who has made such payments may recover from the payee the payments to which he was not entitled."); 3 Kuntz, *supra*, § 42.8 ("If the lessee or the purchaser of royalty oil or royalty gas should overpay a lessor or should make payment to a person not entitled to receive such payment, such lessee or purchaser may or may not be entitled to a refund of the amount erroneously paid, depending upon the circumstances of the payment."). While this claim can be raised affirmatively, payors also assert the defense of "recoupment" against claims of underpayment brought by payees. In this

sense, "recoupment" refers to the legal doctrines of so-called "pure defense" recoupment and common law recoupment. *Mineral Mispayments*; *see generally Waechter*, 537 P.2d at 517–521. Related to defensive recoupment is the doctrine of setoff, also referred to as offset.

The parties pay great attention to the difference between the doctrines of recoupment and setoff. The Court understands the doctrines to have two major differences. First, recoupment typically arises from "the same transaction as the plaintiff's claim" whereas setoff concerns "transaction[s] different than one forming the basis of plaintiff's claim." *Mineral Mispayments* at 105. (citing *Garza v. Allied Fin. Co.*, 566 S.W.2d 57, 62–63 (Tex. Civ. App.—Corpus Christi 1978, no writ) *reformed and aff'd on rehearing*, 626 S.W.2d 120 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.)). Second, recoupment is not barred by the statute of limitations when asserted defensively, whereas setoffs are generally subject to statutes of limitations because they arise from a secondary, extrinsic transaction. *Id*.

The Court uses "recoup" and "recoupment" in the first sense—not as legal jargon, but to describe the self-help mechanism commonly used in the industry. Moreover, because the Court finds that Plaintiffs contractually assumed the Richters' debts, *infra* Section III(B), the Court need not differentiate between recoupment and setoff, counterclaims or affirmative defenses, or "pure defense" recoupment versus common law recoupment. *See generally id*.

## B. Application

In January 2018, Defendant learned that a 2016 change in gas flow resulted in improper payments to several royalty owners. ECF No. 36-1. Consequently, Defendant overpaid the Richters from September 2016 through January 2018.[9] *Id*. Thus, in accordance with established industry practice, Defendant was entitled to recoup the total amount of overpaid funds from the

---

[9] Although Plaintiffs refer to this overpayment as "alleged," *see generally* ECF No. 37, at no point do they argue that they were not overpaid. The Court does not find this fact to be in dispute.

Richters. However, by the time Defendant realized its mistake, the Richters no longer owned the

Subject Property—Plaintiffs did. Thus, the question is whether Defendant's right to recoup funds

from the Richters transferred to Plaintiffs. Defendant argues that the Richters owed Defendant a

debt in the amount of the overpayments and that Plaintiffs assumed the Richters' debts according

to the plain terms of the Special Warranty and Mineral deeds. The Court agrees.

When the Richters transferred their interests to the 291-acre, 290.63-acre, 11.67-acre, and

113.75-acre lots, the Special Warranty deed included the following provision stating that

ownership was transferred:

> **SUBJECT TO** (a) all interests in minerals or royalties previously severed or vested
> in third parties and not currently owned by Grantor, (b) all valid leases for oil and
> gas or oil, gas and other minerals, (c) all valid royalty agreements, pooling
> agreements and designations of pooled units, (d) all valid encumbrances of every
> kind and character, and (e) all easements, restrictions, covenants, conditions and
> other instruments of record in the Real Property Records of Kames County, Texas
> which affect the Minerals."

ECF No. 37-12; *id*. at 17. Similarly, the 509.93-acre lot was conveyed:

> . . . **AS IS, WITH ALL FAULTS** and without warranty, except the limited
> warranty of title contained herein. This conveyance is made and accepted
> **SUBJECT TO** any existing indebtedness, all easements, restrictions, covenants,
> conditions and other instruments of record in the Real Property Records of Kames
> County, Texas which affect the Property.

ECF No. 36-8.

From September 2016 to January 2018, Defendant had overpaid the Richters

approximately $608,818.21. ECF No. 36-1. As established, *supra* Section III(A), Defendant could

deduct this sum from future royalty payments. Phrased differently, the Richters' royalty and

ownership interests were encumbered or indebted by this overpayment. Therefore, when Plaintiffs

took ownership over the Subject Property "subject to" its "encumbrances" and "indebtedness,"

Plaintiffs assumed this debt. Because Plaintiffs contractually assumed the debt, Defendant could

rightfully withhold payments from future royalties.

This reading is further supported by language in the division orders, which provide that "the undersigned agrees to indemnify and reimburse Encana any amount attributable to an interest to which the undersigned is not entitled." ECF Nos. 36-9, 36-10. The division orders were signed by Duane D. Richter, Plaintiff DDR Williams's only "officer, director, member, general partner or manager," and the manager of Plaintiff DDR Weinert's general partner, DDRD Management. ECF Nos. 36-13; 36-14; 36-15. Therefore, Plaintiffs not only took ownership of the Subject Property subject to the Richters' debt, but explicitly agreed to "indemnify and reimburse" Defendant for any funds received that they were not entitled to, including prior overpayments.[10]

Therefore, Plaintiffs contractually assumed the Richters' debt in the amount of Defendant's prior overpayment. Defendant states that it overpaid the Richters by $608,818.21 and was entitled to recover that amount from Plaintiffs. ECF No. 36-1 at 4.[11] Plaintiffs claim that Defendant withheld $608,815.05 from the June, September, and October 2018 royalty payments.[12] ECF No. 37 at 8. Because Defendant withheld less funds than it overpaid, Defendant was entitled to act as it did.

For this reason, Plaintiffs' remaining claims for breach of contract, violations of the Texas Natural Resource Code, TEX. NAT. RES. CODE § 91.401, and conversion fail. First, Defendant did not breach its contracts with Plaintiff. When Plaintiffs acquired title to the Subject Properties, their ownership was subject to the existing oil, gas, and mineral leases between the Richters and

---

[10] Defendant advances two additional arguments that the Court need not address. First, Defendant argues that recoupment is justified because the Richters "solely own and control" Plaintiffs. *See supra* n.4; *see also* ECF No. 36 at 1; 36-13; 36-14; 36-15. Second, Defendant argues that granting Plaintiffs relief would require Defendant to pay royalties twice and that this double payment violates the lease signed between Defendant and the Richters. The lease states that "no change or division in the ownership of said land, or other moneys, or any part thereof however effected, shall increase the obligations or diminish the rights of lessee." ECF No. 26-2–5. If required to pay Plaintiffs, Defendant maintains that it has effectively made two royalty payments. Arguably, those two payments "increase" Defendant's obligations under the lease. ECF No. 39 at 4–6.

[11] ECF No. 36-1 at 4 (stating Defendant withheld $526,048.05 from DDR Weinert and $82,770.16 from DDR Williams).

[12] *See supra* n.7.

Defendant. ECF Nos. 37-1; 37-3; 37-4. Although the underlying leases are silent on the issue of recoupment, the parties agree that recoupment is an available method of self-help for payors. When Plaintiffs contractually assumed the Richters' debts, this entitled Defendant to recover any overpaid funds from Plaintiffs without breaching the lease agreement.

Plaintiffs' argument that Defendant violated the Texas Natural Resources Code similarly fails. Section § 91.404(c) authorizes a cause of action for nonpayment of oil or gas proceeds in accordance with § 91.402 or § 91.403. As relevant here, § 91.402 requires proceeds from oil or gas wells located within Texas to be paid out in accordance with the statutory timetable established and the parties' written agreement. Based on the language in the leases and the division orders, Plaintiffs were not owed the contested royalties for the months of June, September, and October 2018. Therefore, Defendant's withholding of payment did not violate the Natural Resources Code.

Finally, Plaintiffs' conversion argument fails. Under Texas law, conversion is the unlawful and wrongful exercise of dominion, ownership, or control by one person over the property of another, to the exclusion of the same rights by the owner." *Pan Am. Petroleum Corp. v. Long*, 340 F.2d 211, 219–20 (5th Cir. 1964). Because Plaintiffs were not entitled to the withheld funds, this claim fails. Furthermore, "mineral interests and debts for owed royalties are not proper subjects of Texas conversion claims." *Erwin v. Russ*, No. W:09-CA-127, 2010 WL 11506838, at *3 (W.D. Tex. July 19, 2010), *aff'd*, 481 F. App'x 128 (5th Cir. 2012)

## CONCLUSION

The Court **GRANTS** Defendant's motion for summary judgment as to the issues of breach of contract, violations of the Texas Natural Resources Code, and conversion. Plaintiffs' motion for summary judgment for the same is **DENIED**. This case is **DISMISSED**. The Court will issue a final judgment pursuant to Federal Rule of Civil Procedure 58.

It is so **ORDERED**.

**SIGNED** this 16th day of June, 2023.

Xavier Rodriguez
United States District Judge